We have four arguments this morning, a pair, and then two separate cases. We'll begin with number 15, 1500, Mankes, if I've got that right, against Vivid Seats and Fandango. Mr. Biller. Please begin. Good morning, Your Honor. I'm Anthony Biller, and I represent the appellant Robert Mankes in this consolidated appeal. Your Honor, I believe there are two issues before the panel this morning. First, whether the trial court's decision should be vacated and the case remanded for proceeding in accordance with this court's intervening decision in the August 2015 application. Second, whether Mr. Mankes sufficiently pledged a cause of action for patent infringement. Can I ask you this? And those are actually, I think, slightly related questions in this sense. You don't dispute, do you, that dismissal would have been or was proper under our pre-August law of direct infringement? Which may, in fact, be your best justification for having dropped the direct infringement claim until the law changed. After the Supreme Court's holding in Akamai, I believe that... I think they call it Akamai, don't they? That's how I've always pronounced it. I believe that the BMC decision was properly controlled by the district court and her dismissal was appropriate. And am I right also that the district court did not think that you had waived a direct infringement theory by that period, full stop? Well, Your Honor, we had advocated that multi-party infringement or divided infringement should proceed under 271A. Our theory at the time was that it should proceed under a concerted action or actions in concert theory from the restatement second of torts. That wasn't heard, as this panel knows, by the Supreme Court who refused to entertain divided infringement or declined to hear divided infringement under 271A. But, as this panel knows, found that you can't have infringement under 271B for inducement when there's no direct infringement. So the district court took that basis for infringement under 271A and remanded it back to this court, which ultimately held in August 2015 that divided infringement should occur under circumstances, or may occur under circumstances broader than the BMC holding, and reversed what had been the verdict for limelight. So, Your Honor, my client is a state employee who did remote reservation services for golf courses on the side, and through that he would manage remote inventory for the golf courses. He quickly learned that golf courses often had problems with double inventory. They kept a local inventory for walk-up golfers. Can I ask you, obviously, without having had the language of our August en banc opinion in front of you, which you couldn't have had, you could not really have made factual allegations that closely tracked the wording. That's correct, Your Honor. And if you were given the opportunity either to prove facts or to amend the pleadings, what facts would you allege that would either bring you within the contract conditions formulation of our August en banc decision, or might warrant an extension of that standard, which our August opinion also acknowledged to be possible based on particular facts? Right, the decision did hold open the possibility of revisiting theories of attribution and simply did not address joint concert liability, didn't need to address joint concert liability. From the holding in the August 2015 ACME decision, like the patent holder, like ACME, we believe discovery would show that the appellees in this case enter into service contracts with their ticketing partners. We further believe that discovery will show that appellees' ticketing partners upload inventory they select pursuant to instructions provided by appellees. Like Limelight, the appellees receive a benefit from this partnership, with their ticketing partners, and like the defendant Limelight, the appellees in this case establish, we believe, a manner in which inventory is uploaded to their system. Can I go back to the waiver argument that Vivid Seats makes that Fandango doesn't make, I think? Correct. Why on February 28, 2014 did you amend the complaint, and tell me if I'm wrong on the premise, to delete a reference to direct infringement? At that time, we believe that the controlling law from this circuit was multi-party infringement, should proceed under a 271B theory of inducement. We actually didn't intend to remove 271A. I think the court will see we simply pled infringement under 271, not knowing where the law would lead. We thought the better argument was Judge Moore's dissent in the first en banc decision that we should be looking at 271A and looking at common law principles of tort liability. I forget whether it was you personally or one of your counsels sent an email saying, dear other side, you're correct, we do not have a direct infringement theory, right? Well, at that time, that was correct. I'm sorry, that you're not asserting a direct infringement theory, isn't that what the email said? The law was we were pursuing liability under 271B for inducement, which was this panel's, I'm sorry, beyond en banc 2012. The only thing that puzzles me a little bit is that a month before, six weeks before the February 28th amendment to the complaint and I guess the March 7th amendment in the other case, the Supreme Court had granted cert in Akamai, in limelight against Akamai, at least sort of newly raising a possibility that this court's 2012 en banc decision about inducement might be overturned, thereby revivifying the issue that the en banc court in 2012 didn't have to reach, which is whether BMC and uni auction might have been too narrow. So after the court, the Supreme Court granted cert, it seemed to me that the possibility of a direct infringement theory became more significant than it was before the court. I believe that's true and in fact, Mr. Makes filed a friend of the brief courts, a friend of the court brief in that Supreme Court proceeding, arguing exactly for expanded patent coverage for acting in concert under 271A as well as addressing other issues. But to your point, respectfully, I think it's nearly irrelevant for purposes of pleading a counsel's explication of theories of liability between counsel and the requirements of notice pleading, particularly at that time for infringement and this court's holdings for liability form 18 controls, except for 271B in which you must meet the requirements of form 18 and specifically plead inducement. If you go back and look at the complaint, every one of the required elements of form 18 are found in the amended complaint as well as an express allegation of inducement. Do we have precedent on the question whether a complaint that asserts infringement under 271 and doesn't get any more specific than that, doesn't say A, doesn't say B, doesn't say C, anything else, is legally sufficient to encompass all of those more specific theories of infringement? I don't think there's, I'm not aware of a holding that addresses precisely that question. I am aware of this court's RML Carrier 681 F 1322 decision, which addresses allegations of direct infringement and inducement and walks through form 18 and says for purposes of 271B, if we have all the elements of form 18 found in the pleadings, which of course we do in this case, and we have an express allegation of inducement, you need plead nothing more. If the court goes back and look, that's exactly what we had at the time of the amended pleading. Regardless of whether, well, regardless of how you look at it, the court then pled all the elements to cover for 271A, 271B, pursuant to this court's guidance on what was sufficient pleading and pursuant to form 18, which this court has held consistently, at least up to December 1st, 2015. Can I ask one other procedural question? When, I guess in August of 2014, the district court said, I now want to hear the defendant's motion to dismiss on infringement after waiting to see. In June, the Supreme Court decided limelight. The court, the district court then waited to see whether we were going to hear the matter en banc or send it to a panel. We sent it to a panel and at that point, I think it was in August, the district court said, okay, let's get going now. We're no longer going to stay proceedings. In the motion that the defendants filed, or orally, did they argue that you had waived a direct infringement theory? Fandango did not. Vivid Seats kept pointing to the email. I don't recall, I don't know the answer, Your Honor. I believe that they, I don't know if they articulated it as a waiver. I think that, as I recall it, they articulated it as a binding explication of what the pleadings were. That the pleadings are, in fact, a 271B inducement. And I don't remember, am I remembering right? The district court did not say... She gave no lead to it. And of course they shouldn't. If discussions between counsel about theories of liability are going to count as amendments to pleadings, you're going to shut down conversations between counsel explaining theories of liability. Your Honor, I see that my time has expired. I'd like to reserve the remaining time for a vote. Thank you. Ms. Davis. Thank you, Judge Toronto. May it please the court. You had a kind of unhelpful change of law along the way, didn't you? Yes, Your Honor, but we don't think it really makes a difference in this case. And I want to pick up on the question that Your Honor asked Mr. Biller about what facts he's now contending he could plead that would meet the legal standard under this court's en banc decision in Akamai or any of the other theories that this court has recognized for joint infringement. And I think it's important here to recognize that in the amended complaint, Mr. Menke has admitted and conceded and concedes in his briefs in this court that Fandango does not perform all the steps of the claim method. And in fact, many of the steps are performed by these local movie theaters. In fact, as he describes the invention, the invention is a system. Right, but that's not required, right, under what do we call it? Do we call it Akamai 3? I keep referring to it as the August en banc, but that's more than enough. Either one, Your Honor. I've been referring to it as the recent en banc opinion in Akamai. But, well, what is important here, Your Honor, is that there is a requirement that Mr. Menke's provide facts that would support a plausible claim under Iqbal Twombly and this court's application of Iqbal Twombly. There has to be a plausible set of facts from which Mr. Menke's could potentially show his patent infringement claims. And in fact, I think it's telling that what Mr. Biller said in response to Judge Toronto's questions was that he thinks discovery would tell him some facts that he thinks would support his claim. But here, he does have to meet the Rule 12 gatekeeping requirements of having plausible facts. And as we explained in our papers, the claims of the 503 patent all require, in fact, they focus on the local movie theaters allocating tickets in their inventory between this local inventory and this Internet inventory. And what Mr. Biller's amended complaint pleads, and the facts that he identified here, to Your Honors, don't change this. What he pleads is that the movie theaters perform that allocation.  conditions use of its system on that allocation, or any similar factor that would trigger the Akamai-Ombank analysis to find a basis for joint infringement. And in fact, what Mr. Menke's complaint pleads is that in paragraph 18, which is at JA 87, what Mr. Menke's pleads is that Fandango receives money when they sell the tickets online, and it receives no money, the local theaters keep all the money, when the local movie theaters sell tickets to walk-up customers. So the situation is that if the local movie theaters perform the step of the claim method, as Mr. Biller and Mr. Menke's in the briefing have described it, Fandango would be telling, you have to believe that Don't let us sell some of your tickets. Allocate some of them for local sale only. And that's simply not plausible. The facts pled in Mr. Menke's complaint do not create a plausible claim that Fandango is requiring or even encouraging this. That is inconsistent with the facts. The complaint says something about incentivizing movie theaters to be part of this system, right? And so I guess on one hand, you maybe could read that to mean by inducing them that what they're trying to suggest in there, there's a kernel in there of thought that they're willing to confer a benefit onto Fandango if Fandango joins this system and does these certain requirements. Well, the issue, Your Honor, on that is twofold. One is that the incentivization, so the idea that Fandango tries to get the movie theaters to allow Fandango to sell their tickets, they do. Of course they do. And, in fact, that would apply to almost any vendor-customer relationship. So I think it would expand the exception extraordinarily broadly if we were to say anyone who The court in the August opinion did not say whether this new formulation was a broad or narrow application. And, in particular, what we have here is an ongoing interactive relationship which plausibly suggests there must be rules about that relationship, coordination rules. You must give me this information in order for me to do this for you, not kind of single transaction, closed transaction processes. We're not disagreeing that there's a relationship. I think the issue here is that there's no allegation that would support a claim that in that relationship Fandango is the mastermind of the movie theaters performing the claim method. And there does have to be, I think, under Akamai, a relationship between what the alleged infringer is requiring and the steps of the claim method. And here the core steps of the claim method are not ones that are plausibly steps that Fandango is requiring. And you don't hear Mr. Biller did not suggest that he can show that Fandango requires the movie theaters to withhold their inventory for local sale because he knows that that does not make sense and that's not the way this works in the real world. Now, obviously, we don't have a record at this point of that, but the facts that he has pled show that that's not plausible. And the concern here is that any seller of a business online or any situation like this would be potentially liable for whatever it is their customers may be doing that might infringe a patent even if they are completely agnostic as to what those customers are doing. I guess right now the plaintiff doesn't know to what degree there probably is a contract between Fandango and these different movie theaters and doesn't know if Fandango is providing certain kind of software code to the movie theater houses that they will install on their local servers in order to organize the relationship, the communication between Fandango's remote server and the movie theater's local servers. I mean, they can't know that yet, right? Well, but Fandango, they know, and in fact we've told them, Fandango's contracts are to the contrary, and if you send us back down, we will have to go through a process of dealing with these claims again. But there's no, as once again, there's no evidence and no indication that makes any sense that Fandango would be the one telling these movie theaters, don't let us sell all your tickets. Let us make less money. Don't let us sell all your tickets. And that is the central feature of Mr. Menke's claimed invention is this idea that the local vendor gets to control his local inventory and his online inventory. Fandango has no involvement in what these movie theaters do with their local involvement, and it's not a part of using Fandango's system that you either have or don't have a local inventory. The contracts actually don't allow for a local inventory, but that's something that we would have to get into. Yeah. Maybe we can hear from Mr. Matthews now. Thank you. Can you tell me anything about relevant case law about a situation like the present? Between the time of the district court decision and now, there is a significant new formulation of the governing legal standards. The pleadings were not written with that in mind. The district court's opinion was not written with that in mind. I don't know for sure, but perhaps your arguments in the district court were not geared to that formulation, which we were not quoting from something else. It's a new formulation in some meaningful sense. What tells us at what point it makes sense for a remand to be made for the litigation to now proceed maybe to summary judgment, maybe further, maybe not, on the application of this new formulation, which by its terms is open-ended? The law has changed post-Aukmai, August decision. The change in our position is not substantial and is one that is more of a clarification of the standard moving from what is direction control and an attribution to more of an assertation of the relationship and the masterminding control beyond what is the other way to prove joint infringement and that being joint enterprise. I think it's without question the facts. I'm sorry. Did we say in the August opinion that there is direction control, joint enterprise, full stop, nothing more? No. We say that those are two ways, plus there may be new facts, particular facts that warrant an additional basis, but we don't need to get into that here. I guess part of that is did that opinion specifically reject the acting in concert theory? No, I don't believe it. It rejected the acting in concert theory, but I think it did take into consideration this Court's opinion in Judge Moore's dissent in the remand back from the Supreme Court in assessing not just some acting in concert but some overt control. So you have to take an additional step beyond two parties acting together in a contractual or customer relationship, and here these facts, specifically for vivid seats, are even further away from a right case being able to be pled or much less was pled at the district court to suffice a 271 claim. The difference here for vivid seats is, as the amended complaint specifically delineates, that Joint Appendix 64, there are ticket resellers that are the customers. I'm sorry, starting in 63 paragraph 13 of the amended complaint. Vivid seats works with ticket resellers. The patent at issue here is one directed to inventory control at a venue, a movie theater or a concert venue. Here, there is no inventory control once the tickets are beyond that initial sale, and because of that fact, and it says specifically professional ticket resellers, that's a further step away. In this case, it's far more closely aligned with the aristocrat technologies case, the 2013 Federal Circuit Opinion 709F 1348, finding no direction in control where the accused infringer incentivized completing the remaining steps. We don't even have incentivization for the same reasons as Ms. Davis pointed out. Why would we incentivize someone not to use our service solely to keep their inventory? Do you think the aristocrat case on the facts is still good law? I do, and the reason why is it was after the initial en banc Akamai decision and assessed both direct and indirect infringement, and sent the case back down for a decision following the Akamai 2012 en banc decision to reassess induced infringement, 271B, but made no finding of direct infringement under any multi-party theory. The facts align directly with the case for at least Vivid Seats, where there's this overwhelming incentive that's irresistible for the parties to want to allocate, go back to the claims, allocate inventory here. Vivid Seats has no knowledge of what ticket resellers or ticket brokers or agents are selling tickets on their site. They have no incentive to know, they have no benefit, they have no overt mastermind control over how that is done. So this case is even further removed, and it's illogical that because there was a change in 271A, or I won't say a broadening, but a more open standard to considering other facts, when inducement was brought, because that was the only supportable theory at the time, and even that theory, and the complaint, go back to looking at the complaint, failed to allege sufficient facts to support that theory. So we're testing this complaint, mind you, this amended complaint, under Ichyball and Twombly, that it fails to lead to pleading a plausible theory. And that's why, as Judge Taranto discussed, we challenged opposing counsel on what is the theory. And it wasn't just the email exchange, it was the joint motion for the stay, pending the Supreme Court's decision in Akamai, below, where it was expressly provided by the parties that defend it. The Supreme Court holds to establish that inducement of infringement requires that a single actor perform all the steps of the method claim. The inducement claims pled against vivid seeds would not meet that standard. This is Joint Appendix 113. So you've got a clear indication that this is a case initially proceeding based upon the original 2012 en banc decision of the Federal Circuit. Opening up inducement is a possibility for multi-party infringement. During the pendency of that further appeal to the Supreme Court, we have a representation in the email and representation to the court that there is not a claim for direct infringement. So to your earlier question of Judge Taranto about whether there was waiver, we didn't even consider whether there was a claim pled and need not necessarily have to argue waiver. Am I right that the district court in, I guess, August of 2014 or whenever the court issued its rulings agreeing with you on the merits, did not say, I guess in your case or the other case, that a direct infringement theory had been waived? The court did not use waiver. And it, in fact, addressed it on the merits in about three pages of a fairly short opinion. Only on the merits. It found no plausible claim for direct infringement. And that was the end of it. And can I ask you, in your motions for judgment on the pleadings, did you make an argument that said irrespective of the kind of BMC, muni auction, strict view of attribution, there is an element of this claim that simply cannot, under any other theory, be attributed to the defendants? On the facts as pleaded at that stage, yes. The focus obviously was on a movement in the law and a theory under indirect, I'm sorry, under inducement, 271B. I realize it would be a little bit hard to anticipate what the formulation of a change in the standard is and then make an argument specifically addressed to that of the sort that I think Ms. Davis was describing, that there is simply no plausible, possible inference of Vivitzi or Fandango's control of some particular element without quite knowing how to formulate that. In part and parcel, part of these theories arose both in the opposition for the first time and also in the reply brief before this court. So I think it's inherent that it's waived because the issues weren't before the court. And that's, I realize my time's up. Okay, thank you very much. Thank you. Mr. Biller, you have three minutes, or three minutes and change. Eighteen seconds, Your Honor. Your Honor, your question to Mr. Matthews was whether there's any Fed circuit precedent in similar circumstances. In transonic systems versus non-invasive medical technology,  Transonic. Transonic, sorry. Systems versus non-invasive medical technologies at Fed App 765 of pages 778 to 779, the circuit in 2003 in addressing an appeal from the district court on an issue pertaining to the doctrine of equivalence, noted that Festo was an intervening decision at the time of the appeal, vacated the lower court holding, and remanded for deliberations consistent with Festo. This court in 2015 in Oakland. Even though if I'm... The law would have had to have changed. That's a legal question, the Festo question. Is there a factual component of that? In Festo? Yeah. I don't believe so, but it is a legal question. I don't remember. In Oplus Technologies versus Vizio, last year, 782nd F1371, on an appeal, at least in part, on the issue of an award of attorney fees, the panel noted that Octane Fitness was an intervening decision and vacated the lower court holding as it pertained to attorney fees. The reason I ask about the law fact distinction is if there is a factual or other discretionary determination for the district court to make and the district court hasn't made it and it might actually change the result, then yes, remand. But at least Iqbal Twombly plausible claims is a legal question. It comes up on Rule 12.6. Sure. Now, with regard to Iqbal Twombly, caution the court to not convert Form 18 pleading requirements into proving infringement at the pleading stage. This court has repeatedly rejected that, and the argument was forcefully made in R&L Carriers that Iqbal Twombly changed the Form 18 requirement to which this court held that's simply not the case. Form 18 prevails or supersedes or takes precedent over Iqbal Twombly, and the pleadings are not a time and a place to try infringement contentions. Ms. Davis's arguments I think were telling, as were Mr. Matthews. Ms. Davis said, we don't have a record. Mr. Biller cannot show. Your Honors, this is a Rule 12.6 proceeding. At least twice, if not three times, in the material portion of the August 2015 Anbach-Akame decision, the court noted the factually intensive nature of this inquiry. Defendants argue the facts. Defendants do not want to move into discovery. Ms. Davis has the temerity to argue the contract. You raise that and agree. You don't want to use a word like temerity. I'm sorry. Ms. Davis raised the contract. I apologize, Your Honor. We asked for the contract. They refused to provide it. You can't have your cake and eat it too. The larger issue is this is an area of the law that's in flux. It's very clear in the Anbach decision that this court has decided to address this on a case-by-case, factually intensive review basis. They didn't lay out an overarching parameter for evaluating open infringement. My client has met, I believe, in the current state of the plea and certainly can do it again. The Form 18 requirements and to the extent 271B is informative, he met that requirement as well, Your Honor. Thank you for your time. Thank you.